IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                        **CRIMINAL ACTION NO.: 3:19-CR-65-3**
                                                               **(GROH)**

**CURTIS DAVIS,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER
DENYING CURTIS DAVIS'S MOTION TO SUPPRESS**

Currently before the Court is a Motion to Suppress filed by Curtis Davis ("Defendant") on July 3, 2020. ECF No. 151. The Government filed a Response in Opposition on July 10, 2020. ECF No. 154. The Court held a pretrial conference on November 12, 2020. During the conference, the Court heard arguments on the motion and ultimately reserved ruling to allow the parties to provide additional briefing. On January 4, 2021, the parties submitted their supplemental briefs. ECF Nos. 197 & 198. Thus, this issue is fully briefed and ripe for the Court's consideration.

**I. BACKGROUND**

On June 12, 2019, law enforcement officers executed a search warrant at 303 Salem Church Road. The warrant was obtained after the arrest of two co-defendants the day before. According to Special Agent Cox's sworn statement, ATF agents were notified that co-defendant Derrick Hough was possibly involved in a scheme to traffic firearms.

1

Accordingly, agents were surveilling a local firearms shop when Defendant Hough went to pick up three handguns.

When law enforcement officers attempted to stop Defendant Hough's vehicle, he fled, striking law enforcement vehicles in the process. Hough was eventually stopped, and Orville Darby, another co-defendant, was in the front passenger seat of the car. The three handguns Hough picked up were behind the driver's seat but within Darby's reach. Officers found approximately $2,200.00 on Darby and another $100.00 that had been ripped to pieces on the front passenger floorboard. Ripped plastic baggies beside the driver's seat were also recovered. Both Hough and Darby were placed under arrest and taken into custody.

After his arrest, Hough was interviewed, and according to Agent Cox's affidavit, Hough advised investigators that he had purchased seven firearms for other people within the last year. Hough advised the officers that a couple of the firearms were in Darby's possession inside a residence located at 303 Salem Church Road ("Residence"). Hough told officers that a couple firearms had been moved to the Residence earlier that day. Hough also admitted to using heroin earlier in the day. Officers searched law enforcement databases and found that Darby's address matched the Residence address Hough provided. Further, Darby had a handwritten rent payment receipt, with the same address, on his person and dated June 4, 2019.

Based upon this and other information, Agent Cox applied for a search warrant for the Residence. The warrant authorized the search and seizure of, *inter alia*, "firearms, ammunition, controlled substances and other items criminally possessed"; "Cellular telephones"; and "Safes and locked boxes." ECF No. 154-1 at 3. Law enforcement

officers executed the search warrant early in the morning on June 12, 2019. According to law enforcement reports that Defendant Davis attached to his Motion [ECF No. 151-1], while officers were searching the residence, Defendant Davis "attempted to stash what appeared to be a baggie of individual [sic] packaged heroin into an air vent on the floor. Davis was then searched thoroughly by officers and two large baggies of individual bags suspected crack cocaine and large bundles of U.S. Currency were located on his person." Id. at 16.  A bedroom identified as Davis's was then searched where officers discovered more packaged suspected narcotics.

## II. THE PARTIES' CONTENTIONS

Defendant Davis argues that the affidavit in support of the search warrant "is devoid of any nexus between Mr. Hough's firearm purchases and any illegal drug activity or cellular phone in the possession of occupants in the residence."  ECF No. 151 at 7. Further, "Davis contends that the search warrant affidavit fails to establish probable cause to believe that evidence of a crime, namely Mr. Darby unlawfully possessing firearms, would be present at 303 Salem Church Road."  Id. at 3.

In support of his argument, Davis cites United States v. Doyle, arguing that only co-defendant Hough's "uncorroborated claims" link the Residence to any criminal activity. 650 F.3d 460 (4th Cir. 2011) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."). Davis also argues that the instant case is like United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996).  In Wilhelm, the Fourth Circuit concluded that the search

3

warrant was not supported by probable cause, focusing on the affidavit's reliance upon an "unknown, unproven informant—with little or no corroboration . . . ."

Finally, Davis cites United States v. Cobb, 970 F.3d 319 (4th Cir. 2020) for the Fourth Circuit's explanation of the severance doctrine. Specifically, the severance doctrine allows courts to sever "the constitutionally infirm portion" of a warrant and suppress evidence seized under that portion of the warrant. Accordingly, Davis asks the Court to suppress any evidence of illegal drug activity and Davis's iPhone, which were seized during the search of the Residence.

The Government argues that probable cause to search existed, and this Court should afford the magistrate's determination great deference. ECF No. 154 at 4. The Government notes that Hough provided officers with a statement that he had procured firearms for other individuals and some of those firearms were inside the Residence. The Government also contends that Agent Cox's affidavit demonstrated probable cause that Orville Darby was involved in the distribution of narcotics. Specifically, the affidavit explained that "Darby had a significant amount of cash on him, that there was ripped up cash on the floor of the vehicle, and that there were empty baggies consistent with the distribution of narcotics." Id. at 5. Further, the affidavit noted that Hough admitted to using heroin that day and was moving into the Residence with Darby. Id.

As to Davis's iPhone, the Government avers that defense counsel conflates the requirements for seizing and searching a cell phone. Although the July 12, 2019 warrant included cellular telephones as items to be seized, the Government notes that Agent Cox obtained a separate search warrant from Magistrate Judge Robert Trumble on June 20,

2019, to search the contents of Davis's iPhone. Thus, the Government asks the Court to find that the warrant was supported by probable cause and deny Davis's Motion.

### III. DISCUSSION

The Supreme Court of the United States defines probable cause as "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Or, stated another way, probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996).

In this case the affidavit stated that Hough had purchased fifteen firearms within the year prior and was scheduled to pickup three firearms on June 11, 2019. ECF No. 151-1 at 9. On the ATF Form 4473, Hough provided an inaccurate address in violation of federal law. Further, Hough utilized rental cars when he picked up the firearms and paid in cash, which Agent Cox noted was indicative of firearms trafficking. Id. After Hough picked up three firearms on June 11, 2019, Agent Cox and other officers attempted to stop Hough's vehicle, and he fled. Hough was eventually stopped, and Darby was in the front passenger seat. Officers found the three firearms behind the driver's seat, within arm's reach of Darby, who also had approximately $2,200.00 in cash on his person as well as $100 that was ripped up on the floorboard.[1] Officers also found two ripped plastic baggies beside the driver's seat.

During an interview after his arrest, Hough told officers that he had used heroin earlier that day, that seven of the firearms he purchased were for other people, that a

---

1     The Government contends that officers suspected Darby likely believed this was marked money received in a drug transaction and ripped the cash to destroy that evidence.

5

couple of those firearms were still at the Salem Church Road residence and "in the possession of D[arby]." Id. A search of law enforcement databases confirmed that Darby was listed as owner or tenant of the Residence, and they found a rent receipt for that address on Darby's person. Officers also retrieved Darby's criminal history and determined that he is a convicted felon. Based upon this information, Agent Cox sought a warrant to search for and seize, among other things, firearms, ammunition, controlled substances, cellular telephones, electronic devices, computers, safes and locked boxes.

The Court finds that the issuing magistrate had a substantial basis for concluding that probable cause existed. See United States v. Hodge, 354 F.3d 305 (4th Cir. 2004) (citing Illinois v. Gates, 462 U.S. 213, 238–39 (1983)). Furthermore, the issuing magistrate's probable cause determination is entitled to great deference. Wilhelm, 80 F.3d at 118–19. It is well established that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Hodge, 354 F.3d at 309 (quoting Gates, 486 U.S. at 232). The Fourth Circuit has upheld search warrants under similar, if not less favorable, facts to the Government than those before this Court. See, e.g., United States v. Porter, 738 F.2d 622, 623 (4th Cir. 1984) (*en banc*).

The Court concludes that Agent Cox's affidavit established probable cause to search for firearms and evidence of firearm's trafficking. Specifically, the ATF was notified about Hough's purchases; Hough used an inaccurate address on the Form 4473 on more than one occasion; he picked up the firearms in rental cars; he paid cash for the firearms; Hough fled when officers attempted to stop his vehicle; ripped baggies appearing to be related to narcotics distribution were recovered beside the driver's seat; Hough admitted

to using heroin earlier the same day he was arrested; he admitted to purchasing firearms for other individuals, including Darby; he stated that some firearms were still at Darby's residence; Darby, a convicted felon, went with Hough to pick up the guns and rode along knowing the firearms were within arm's reach behind Hough's seat; there was $100 ripped up on the floorboard; and Darby had approximately $2,200.00 in cash on his person.

The Court rejects Davis's arguments that this case is similar to Wilhelm; the two are easily distinguishable. In Wilhelm, the Fourth Circuit held that "State police obtained the warrant based only on a vague tip from an anonymous, unproven informant." 80 F.3d at 117. Here, the information was not a "tip" and was neither vague nor from an anonymous informant. It was specific—Hough told officers he illegally bought guns for Darby and there were some at his residence. Hough was not anonymous. Davis also claims that none of Hough's information was corroborated, but the investigation and incident surrounding Hough's arrest corroborated his statements. Darby was with Hough when the two were being surveilled and ultimately arrested by ATF agents. Hough also provided Darby's address, which matched the rent receipt on Darby and law enforcement databases. To be clear, the police in Wilhelm "received a telephone call from an individual who stated that he or she had observed marijuana in Wilhelm's home." 80 F.3d 116, 117. The instant case is markedly different.

Whether there was a substantial basis for the issuing magistrate to conclude probable cause existed to issue a search warrant for controlled substances is admittedly a closer question. Nonetheless, the Court is persuaded that a substantial basis exists.[2]

---

[2] Assuming *arguendo* no probable cause existed, the Court further finds that the good faith exception would apply. See United States v. Leon, 468 U.S. 897 (1984). Although the Government did not raise this argument in its briefing or at the hearing on Davis's Motion, and the Court need not reach this analysis because probable cause existed, the Court finds it prudent to note that the Court would nonetheless find

7

First, the application for search warrant and its attachments make clear that the focus of the search and investigation is firearms trafficking.  However, Agent Cox included information that allowed the magistrate to find probable cause that controlled substances might also be found at the Residence.  Namely, Hough had used heroin earlier the same day and told officers he was moving into Darby's residence; ripped baggies indicative of drub distribution were found in the car; Darby had a large amount of cash on his person, and some was ripped on the floor.  Further, Hough told officers he was purchasing firearms for others, including Darby.

In this Court's experience, drug users who traffic firearms often buy firearms for their drug dealer in exchange for free or discounted drugs. The application for search warrant and supporting affidavit did not state drug related crimes were being committed, but it sought to search for and seize any controlled substances found related to firearms trafficking.  The Court finds that these facts and circumstances are "sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996).

Even assuming the warrant lacked probable cause to search for controlled substances, Davis's motion must still fail.  If the officers went to the Salem Church Road residence to execute a search warrant *solely* for firearms and related evidence, Davis would have met the same outcome.  According to reports attached to Davis's Motion, while officers conducted their search of the residence, they noticed Davis attempting to secrete a bag containing what appeared to be individually packaged narcotics into an air

---

that the officers acted in good faith to obtain from a magistrate the search warrant at issue, and acted within its scope in seizing controlled substances found inside the Residence.

vent in the floor. Officers then carefully searched Davis and recovered two large baggies of individually packaged suspected crack cocaine and large bundles of cash.

Once Davis was observed red-handedly attempting to conceal controlled substances, the officers were lawfully entitled to arrest him and search his person and immediate surrounding area. Because probable cause supports any portion of the search warrant (to search for firearms trafficking evidence), the officers were lawfully present when they observed Davis attempting to conceal evidence of criminal activity. That evidence, and what was recovered from him thereafter, is clearly admissible.

Moreover, the controlled substances found in other parts of the Residence while the officers were searching for firearms would also be admissible under the plain view doctrine. See Horton v. California, 496 U.S. 128, 136 (1990) (Noting, "not only must the item be in plain view; its incriminating character must also be 'immediately apparent.'") (quoting Coolidge v. New Hampshire, 403 U.S. 443 (1971)). There were no arguments before this Court that the officers searched anywhere within the residence that was inappropriate for finding firearms or other items to be searched for or seized. In other words, the officers' discovery of controlled substances in closets or elsewhere while looking for firearms is not precluded or prohibited. The officers were searching areas where evidence of firearms trafficking could have been kept or stored pursuant to the search warrant when they discovered controlled substances.

Davis also argues that his iPhone was unlawfully seized. Arguments were made that the iPhone was not on his person but in a bedroom at the Residence. Davis also avers that he told officers it was his phone, and therefore, it should not have been seized. The Court finds no reason that officers could not seize Davis's phone—regardless of its

9

location within the Residence. If the phone was on his person or nearby, then officers could have seized it incident to their arrest and discovery of controlled substances in his possession. If the phone was elsewhere in the residence, the search warrant authorized seizure of cellular phones, which is logical as part of the firearms trafficking investigation. Regardless of Davis's iPhone's location, the outcome is the same: it was lawfully seized.[3]

## IV. CONCLUSION

Having carefully reviewed the record and thoughtfully considered the arguments and evidence presented, the Court concludes that Curtis Davis's Motion to Suppress must be **DENIED**. ECF No. 151. The Clerk of Court is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED**: March 2, 2021

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Officers did not search the contents of Davis's phone until after it applied for and received a subsequent search warrant specifically to search his phone. See ECF No. 154-2.